### IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN HASCALL<br>1205 Beacon Drive<br>College Station, TX 77845,<br><br>   *Plaintiff,*<br><br>   v.<br><br>AB PAC (d/b/a "American Bridge")<br>800 Maine Avenue, SW, Suite 400<br>Washington, D.C. 20024<br><br>Serve:  C T CORPORATION SYSTEM<br>   1015 15th Street, N.W., Suite 1000<br>   Washington D.C. 20005,<br><br>   *Defendant*. | Case No.: 1:24-cv-2366 |

### COMPLAINT

Plaintiff, Susan Hascall ("Plaintiff"), by her undersigned counsel, Melehy & Associates LLC, hereby brings this action against Defendant AB PAC ("AB") for violations of Plaintiff's rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the District of Columbia Minimum Wage Revision Act, D.C. Code § 32-1001, *et seq.* ("DCMWRA"), as enforced through the District of Columbia Wage Payment and Collection Act, D.C. Code §§ 32-1301 *et seq.* ("DCPCWL").

In support, Plaintiff alleges as follows:

## THE PARTIES

1.     Plaintiff is an adult resident of the State of Texas and has been employed by AB for a period of approximately two and a half years, beginning in, or around, March 2022 and continuing to the present (the "relevant period"). During the relevant period, Plaintiff worked as a Tracker/Field Political Researcher for AB.

2.     On a regular and recurring basis while employed by AB, Plaintiff was engaged in commerce within the meaning of 29 U.S.C. § 207(a) of the FLSA for the following reasons: (a) Plaintiff regularly crosses state lines while traveling for her employment, including by traveling to the District of Columbia for AB organizational meetings, and traveling on at least 10 occasions to Arizona, Louisiana, and Nevada to attend and record political events; (b) Plaintiff has weekly virtual meetings with AB supervisors and employees who are located in the District of Columbia; and (c) Plaintiff sends daily emails to her direct supervisor in Iowa and her second level supervisor, who first resided in the District of Columbia, and who now resides in Michigan.

3.     AB is a 501(c)(4) not-for-profit Political Action Committee organized under the laws of the District of Columbia, with its headquarters at 800 Maine Avenue, SW, Suite 400, Washington, D.C. 20024. AB has employed multiple persons at its headquarters in the District of Columbia throughout the entire relevant period.

4.     During the relevant period, AB employed, and continues to employ, Plaintiff within the meaning of the FLSA, the DCMWRA, and the DCWPCL because, through its managers, members, owners, and officers, it hired Plaintiff, it set the terms and conditions of Plaintiff's compensation, it supervises Plaintiff, it pays Plaintiff's wages, it is involved in the violations that give rise to this case, it maintains Plaintiff's employment records, and it has the authority to terminate Plaintiff.

## SUBJECT MATTER JURISDICTION

5.      The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims involve federal questions. It has supplemental jurisdiction over Plaintiff's District of Columbia law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy as Plaintiff's claims involving federal questions.

## PERSONAL JURISDICTION OVER AB

6.      This Court has specific personal jurisdiction over AB under the District of Columbia Long Arm Statute, D.C. Code § 13-423 because it regularly transacts business or performs work or services in the District of Columbia. In addition, Plaintiff's cause of action arises out of (or relates to) AB's contacts with the District of Columbia, because, during the time Plaintiff worked for AB, it violated the FLSA and the DCMWRA, as enforced through the DCWPCL, by failing to pay Plaintiff an overtime premium for every hour that she worked over 40 in a single week.

7.      This Court has general personal jurisdiction over AB under D.C. Code § 13-422 because, throughout the entire time during which Plaintiff has worked for it, AB has been organized under the laws of the District of Columbia, has been registered as a not-for-profit corporate entity in the District of Columbia, has maintained a resident agent in the District of Columbia, and has been domiciled in the District of Columbia through maintaining its headquarters there.

## VENUE

8.      Venue is proper in this district under 29 U.S.C. § 1391(b)(1) because AB is organized under the laws of the District of Columbia and maintains its headquarters in the District.

3

**STATEMENT OF FACTS**

9.      Plaintiff was a Form W2 employee of AB and not an independent contractor within the meaning of the FLSA, the DCMWRA, or the DCWPCL.

10.      AB is a not-for-profit political action committee whose primary mission is to research and track the statements of Republican politicians and to engage in communications and rapid response in support of progressive causes.

11.      Plaintiff is employed as Tracker/Field Political Researcher for AB in Texas. AB assigns Plaintiff a list of Republican politicians to track. Plaintiff's primary politicians to track were in Texas, though she would occasionally be assigned to assist with tracking politicians in other states. Plaintiff's primary duties are to, each morning, obtain a full list of all of those politicians' appearances on podcasts, news shows, or other broadcasts. She then downloads either the full video, or just the audio, of those appearances and uses automatic transcription software to generate a transcript of what they said. She then manually edits the transcript to correct any errors. Once that is done, Plaintiff goes through the transcript and looks for any comments concerning the specific topics that her supervisors at AB have assigned to her (e.g. abortion). In addition, Plaintiff highlights any particularly outrageous statements. She then electronically sends the transcripts to her direct supervisor, who works remotely in Iowa. Plaintiff is given very limited opportunity to engage in any analysis of the comments. The vast majority of Plaintiff's working time (95-98 percent) is spent on non-exempt functions like collecting audio and video, generating and correcting transcripts, and then highlighting the text based on the topics AB has ordered her to focus on. Proper analysis of the comments, and the decision making as to what comments to publicize or to send to reporters, is performed by her supervisors and AB's analysis and communications team.

12.     AB also directs Plaintiff to make lists of every public event where a politician that she has been assigned to track is going to speak. Plaintiff sends that list to her supervisor at AB. AB then decides which events Plaintiff will be required to attend. These events are throughout Texas and even in Arizona, Louisiana, and Nevada. Attending these events frequently requires Plaintiff to make very long trips, including road trips of more than 8 hours each way. Plaintiff's duties at these events are to record a video of the public speaking engagement and then to engage in the same tasks as before: generate a transcript, correct the transcript, and then highlight the transcript based on the topics AB has directed her to focus on.

13.     The hours that Plaintiff spends traveling to public events is compensable work time because it is outside of the ordinary home-to-work travel occasioned merely by her employment, and is performed for AB's benefit, at its request, to meet the needs of a particular assignment. 29 C.F.R. § 785.37.

14.     Plaintiff's job duties do not require a specific college degree and several of her fellow Trackers/Field Researchers are currently in college and have not yet graduated. In addition, Plaintiff has very little opportunity to exercise judgment or discretion, as the analysis of the transcripts, and the decision as to what information to publish, is made by AB's communications team. The vast majority of Plaintiff's working time is spent collecting the information AB tells her to collect and then processing it into a more convenient format for that team.

15.     Plaintiff primarily performs her job remotely from her home in Texas, with the exception of when she needs to travel to record a public speaking engagement. Plaintiff occasionally travels across state lines to record these engagements. In addition, Plaintiff has traveled to AB's offices in the District of Columbia on at least three occasions for organizational meetings. Plaintiff's direct supervisor performs his work remotely from his home in Iowa.

Plaintiff's second level supervisor previously performed his work from AB's offices in the District of Columbia, but now performs it remotely from his home in Michigan. Plaintiff communicates on a daily basis with her supervisors by email, and also participates in weekly virtual meetings with AB staff members at its headquarters in the District of Columbia. AB's management and analysis and communications teams primarily work out of AB's offices in the District. AB does not maintain offices anywhere other than in the District.

16.     AB pays Plaintiff on a salary basis of $57,000.00 per year. Plaintiff regularly works more than 40 hours in a workweek, but AB has always failed to pay Plaintiff an overtime for her overtime hours in violation of the FLSA, the DCMWRA, and the DCWPCL. AB has never informed Plaintiff which overtime exemption it claims applies to her, if any. AB occasionally, based on supervisor discretion, provides Plaintiff with "comp time" when works on the weekend.

17.     Plaintiff generally works from Monday to Friday from 8:00 a.m. to 6:00 p.m. From March 2022 to October 2023, she almost never took a lunch break. From October 2023 to January 2024, she took a lunch break of approximately 30 minutes approximately twice per week. From January 2024 to the present, she generally takes a lunch break of approximately 30 minutes to one hour two to three times per week. From March 2022 to October 2023 Plaintiff estimates that she generally worked an average of 50 hours per week (10 hours of overtime). From October 2023 to January 2024 Plaintiff estimates that she generally worked an average of 49 hours week (9 hours of overtime). From January 2024 to the present, Plaintiff estimates that she generally worked an average of 47-48.5 hours per week (7 to 8.5 hours per week).

18.     Besides her general schedule, Plaintiff frequently works substantially longer hours during periods where there is a much higher density of public and online events, such as primary seasons, midterms, and general elections. During these periods, Plaintiff has to work irregular

schedules, due to having to attend online events at night approximately two to three times per week and having to travel, including across state lines, to public events approximately twice a week. Plaintiff estimates that she worked an average of 60-65 hours (20-25 hours of overtime) per week during these periods of greater event frequency. Plaintiff estimates that she has worked this heightened schedule during approximately 35 percent of her weeks while employed by AB.

19.     AB does not maintain time records for Plaintiff and does not require her, or provide the means, to record her time.

20.     AB is aware that Plaintiff is working overtime hours because it knows, through its managers and employees, that Plaintiff is sending communications and work materials during the work hours plead above, including on weekends, and that it directs Plaintiff to travel very long distances to attend public events, including on the weekends.

21.     Plaintiff is not in possession of any of her time and payroll records. Those records are in the exclusive possession of AB.

**COUNT I**
**VIOLATIONS OF THE FLSA**
**29 U.S.C. §§ 201 – 216 (b)**

22.     Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

23.     At all times relevant to this Complaint, AB was an "employer" of Plaintiff within the meaning of the FLSA.

24.     At all times relevant to this Complaint, Plaintiff was an "employee" of AB within the meaning of the FLSA.

25.     At all times relevant to the Complaint, Plaintiff regularly used the instrumentalities of interstate commerce for her work within the meaning of the FLSA and therefore had individual coverage under the FLSA.

26.     At all times relevant to the Complaint Plaintiff was not exempt from the FLSA.

27.     AB violated the FLSA by failing to pay Plaintiff one and one-half times her regular hourly rate for each hour over 40 that she worked in a single work week.

28.     AB did not act in good faith or with a reasonable belief that their actions were lawful, entitling Plaintiff to liquidated damages.

29.     AB acted willfully, making the statute of limitations three years rather than two years.

30.     Plaintiff is not able to calculate her damages because she is not in possession of any time records or payroll records, which are in the possession and/or control of AB.

31.     AB is liable to Plaintiff under 29 U.S.C. § 216(b) for her unpaid and illegally withheld wages, an additional amount equal to her unpaid wages as liquidated damages, and her attorneys' fees and costs.

## COUNT II
## VIOLATIONS OF THE DCMWRA ENFORCED THROUGH THE DCWPCL
### D.C. Code §§ 32-1001, *et seq.* and D.C. Code §§ 32-1301, *et seq.*

32.     Plaintiff re-alleges and incorporates the allegations contained in the paragraphs above.

33.     At all times relevant to the Complaint, Plaintiff was an "employee" of AB within the meaning of the DCWPCL. D.C. Code § 32-1301(2).

34.     At all times relevant to the Complaint, AB was an "employer" of Plaintiff within the meaning of the DCWPCL. D.C. Code § 32-1301(1B).

35.     AB employed Plaintiff in the District of Columbia within the meaning of § 32-1301(1B) because she spent some working hours in the District and because AB employed persons within the District of Columbia during the entire time relevant to Plaintiff's complaint. *Steinke v. P5 Sols, Inc.*, 282 A.3d 1076, 1082-84 (D.C. 2022). Thus, Plaintiff was a covered employee under the DCPCWL for her entire employment with AB.

36.     At all times relevant to the Complaint, Plaintiff was an "employee" of AB within the meaning of the DCMWRA. D.C. Code § 32-1002(2).

37.     At all times relevant to the Complaint, AB was an "employer" of Plaintiff within the meaning of the DCMWRA. D.C. Code § 32-1002(3).

38.     All D.C. state claims for unpaid wages that are either promised by the employer, or owed under statute, are enforced through § 32-1308(a) of the DCWPCL. This includes all claims for unpaid minimum wages or overtime premiums that an employee is entitled to under the DCMWRA. D.C. Code § 32-1012(a).

39.     As a foundational step, all claims for unpaid wages, either promised, or owed pursuant to a statutory entitlement, must meet the requirements of the DCWPCL, including its geographic requirements and its statute of limitations. D.C. Code §§ 32-1301(1B); 32-1308.

40.     To be entitled to D.C. minimum wages under the DCMWRA, an employee must meet the requirement that they regularly spend more than 50 percent of their working time in the District of Columbia. D.C. Code § 32-1003(b)(1) (effective March 1, 2024) (stating that D.C. minimum wages must be paid when an employee spends 50 percent of their working time in the District of Columbia); D.C. Code § 32-1003(a) (effective until February 29, 2024) ("the minimum wage required to be paid to any employee by *any employer in the District of Columbia*") (emphasis added); D.C. Code § 32-1003(b) (effective until February 29, 2024).

41.     An employee's entitlement to overtime premiums under the DCMWRA is not and has never been subject to the 50 percent working time requirement, which only applies to claims for minimum wages. D.C. Code § 32-1003(c). Prior to amendments effective on March 1, 2024, the DCMWRA provided that "[a] person shall be employed in the District of Columbia when: (1) The person regularly spends more than 50% of their working time in the District of Columbia; or (2) The person's employment is based in the District of Columbia and the person regularly spends a substantial amount of their working time in the District of Columbia and not mor than 50% of their working time in a particular state." D.C. Code § 32-1003(b). The term "employer" is defined as "any individual, partnership, general contractor, subcontractor, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." D.C. Code § 32-1002(3). Section 32-1003(a) makes it clear that the minimum wage provisions apply to "any employer in the District of Columbia." However, the overtime provisions of the DCMWRA apply to any "employer", without geographic limitation,

as the language limiting application to employers in the District of Columbia is not present. Section 1003(c) ("no employer shall pay any employee").

42.     The D.C. Council reinforced this distinction in the D.C. Minimum Wage Clarification Amendment Act of 2023, D.C. Law 25-132. That law clarified that the 50% rule only applies to minimum wage claims. D.C. Code § 32-1003(b)(1) (effective March 1, 2024). It now provides that: "Except as provided in subsection (h) of this section, *an employer shall pay the minimum wage* established pursuant to subsection (a) of this section to an employee for all hours the employee works for the employer when: (1) The employee regularly spends more than 50% of their working time in the District of Columbia; or (2) The employee's employment is based in the District of Columbia and the employee regularly spends a substantial amount of their working time in the District of Columbia and not more than 50% of their working time in any particular state." *Id*.

43.     At all times relevant to this complaint, Plaintiff's entitlement to overtime wages under the DCMWRA, and to enforce that entitlement under the DCWPCL, was only limited by the broad geographic scope of the DCWPCL, which she satisfies. D.C. Code §§ 32-1003(c); 32-1301(1B); 32-1308(a); *Steinke*, 282 A.3d at 1082-84.

44.     At all times relevant to the complaint, Plaintiff was not exempt from the overtime requirements of the DCMWRA. D.C. Code § 32-1004(a)(1). Since she also satisfies the requirements of the DCWPCL, she was entitled under the DCMWRA to an overtime premium for every hour in excess of 40 that she worked in a single week and to enforce that entitlement under the DCWPCL.

45.     AB violated Plaintiff's entitlement to overtime premiums under the DCMWRA by never paying her an overtime premium for every hour that she worked over 40 in a single week.

46.     As a result of AB's violations of Plaintiff's entitlement to overtime premiums under the DCMWRA, as enforced through the DCWPCL, it is liable for Plaintiff's unpaid overtime premiums, liquidated damages equal to three times the unpaid overtime wages and reasonable attorneys' fees and costs incurred in this action, including attorneys' fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

47.     The precise amount owed to Plaintiff by AB cannot be calculated at this time because Plaintiff is not in possession of any time or payroll records.

### RELIEF REQUESTED

Plaintiff requests the following relief:

A.     Enter a judgment against AB, and in favor of Plaintiff, based on violations of the FLSA, in the amount of Plaintiff's unpaid wages, plus an amount equal to the amount of unpaid wages as liquidated damages;

B.     Enter a judgment against AB, and in favor of Plaintiff, based on violations of the DCMWRA, as enforced through the DCWPCL, in the amount of Plaintiff's unpaid overtime wages, plus an amount equal to three times the amount of the unpaid wages as liquidated damages.

C.     Enter judgment against AB, and in favor of Plaintiff for her litigation costs and attorney's fees at the Adjusted Laffey Matrix rate, the Legal Services Index Rate and/or the rates set forth in *Salazar ex rel. v. District of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), as required by D.C. Code § 32-1308 (b)(1).

Respectfully submitted,

*/s/Omar Vincent Melehy*
Omar Vincent Melehy
D.C. Bar No.: 415849
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
ovmelehy@melehylaw.com
Phone:  (301) 587-6364
Fax:     (301) 587-6308

*/s/Alexandre Todorov*
Alexandre (Sasho) Todorov
D.C. Bar No.: 1697453
MELEHY & ASSOCIATES LLC
8403 Colesville Road Suite 610
Silver Spring, Maryland 20910
stodorov@melehylaw.com
Phone:  (301) 587-6364
Fax:     (301) 587-6308

*Counsel for Plaintiff*